UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DAVID KIBEC,

        Plaintiff,

    v.

CARL BALOG, an individual, OREGON
PAIN ASSOCIATES, PC, an Oregon
corporation, and AMERICAN PAIN RELIEF,
LLC, an Oregon limited liability company,

        Defendants.

Case No. 3:12-cv-559-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

On February 22, 2012, plaintiff, David Kibec, filed a complaint in state court against defendants Carl Balog ("Balog"), Oregon Pain Associates, PC ("OPA"), and American Pain Relief, LLC ("APR"). Defendants timely removed that case to this court pursuant to 28 USC §1441, based on federal question jurisdiction under 28 USC § 1331 over those claims governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §§ 1001, *et seq*.

1 - FINDINGS AND RECOMMENDATION

009

Defendants have now filed a Motion to Dismiss and Strike some or all of plaintiff's claims (docket # 4). For the reasons set forth below, that motion should be granted in part and denied in part with leave granted to plaintiff to file an amended complaint.

## STANDARDS

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FRCP 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*, quoting *Twombly*, 550 US at 555. In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*, quoting *Twombly*, 550 US at 570. In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995).

## ALLEGATIONS

Balog is a medical doctor, and both OPA and APR provide medical services. Complaint, ¶¶ 3-5. Balog is the president, owner and manager of OPA, a professional corporation, who controlled OPA by exercising the sole discretion for policy decisions regarding management, staffing, and capitalization. *Id,* ¶¶ 4, 22, 31, 64. He also holds a 40% plurality interest in APR, a limited liability company. *Id,* ¶ 16.

Plaintiff was employed as OPA's business administrator from October 2005 through January 2012 pursuant to an Employment Agreement. *Id*, ¶ 1. Plaintiff alleges that Balog used his dominion over OPA for an improper purpose. He intentionally diverted wages owed to plaintiff, as well as funds that plaintiff attempted to contribute to a 401(k) retirement account. *Id*, ¶¶ 8-11. Balog also accepted a series of cash loans from plaintiff which he failed to repay. *Id*, ¶¶ 12, 13, 21. In addition, Balog persuaded plaintiff to take out a personal line of credit to cover OPA expenses which remains outstanding. *Id*, ¶ 14.

Balog's actions eventually led to a dire financial situation for OPA. *Id*, ¶ 24. In 2011, creditors were no longer willing to extend the credit necessary to keep OPA's doors open. *Id*, ¶ 15. At that point, Balog obtained financing from his employees at OPA. Balog, plaintiff, and a registered nurse at OPA (Joseph Knaus) agreed to create APR to service OPA's existing client base. *Id*, ¶ 16. APR was capitalized exclusively through contributions by plaintiff and Knaus. *Id*, ¶ 18. The only contribution from Balog came in the form of a payout of vacation time that OPA owed to plaintiff, which, in turn, plaintiff advanced to Balog for his capital contribution. *Id*.

Balog's pattern of abuse of the corporate form persisted with APR. He relied on plaintiff to meet his wage obligations to Joseph Knaus, and he diverted funds away from APR to himself by running all patient billings through the purportedly defunct OPA. *Id*, ¶¶ 19-20.

Based on those allegations, plaintiff alleges nine claims against OPA, APR, and Balog to recover unpaid wages, loans, and contributions.

## **FINDINGS**

Plaintiff concedes that Count 3 of the First Claim and the Second Claim relating to an employee health insurance plan and a 401(k) plan are preempted by ERISA and intends

3 - FINDINGS AND RECOMMENDATION

to amend his complaint to seek relief under ERISA.  Although it is not clear how he will amend those claims, which may require adding new defendants, he should be allowed that opportunity.

Plaintiff also concedes that the 25% interest rates for the promissory notes alleged in the Third and Fourth Claims are usurious under ORS 82.010(4).  Complaint, ¶¶ 56, 61.  Thus, those allegations should be stricken.

However, plaintiff contests the remaining motions.

## I. First Claim (Oregon Wage Claim Act)

The First Claim alleges that OPA and Balog violated ORS 652.110, *et seq,* by failing to pay plaintiff wages from November 1, 2011, to January 12, 2012 (Count 1), unused vacation time (Count 2), and overtime hours after November 1, 2011 (Count 3).  Plaintiff alleges that OPA, not Balog, was his employer.  Complaint, ¶¶ 6, 7.  Thus, Balog seeks to dismiss this claim because any wages owed are the debts of OPA, a professional corporation, for which he, as a corporate officer, cannot be held personally liable.  ORS 58.185(10) (corporate officers "are not personally liable for the debts or other contractual obligations of the corporation").

Plaintiff responds with two arguments.  First, he asserts that the definition of "employer" under the Fair Labor Standards Act should be imported into the Oregon Wage Claims Act, ORS 652.110, *et seq*, to encompass managers, such as Balog, who have exclusive control over employees.  *See Lambert v. Ackerley*, 180 F3d 997, 1011-12 (9th Cir 1999) (construing the term "employer" under the FLSA to include individuals who exercise "control over the nature and structure of the employment relationship, or economic control over the relationship"); *Chao v. Hotel Oasis*, 493 F3d 26, 34 (1st Cir 2007) ("The

4 - FINDINGS AND RECOMMENDATION

overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages").

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 USC § 203(d).  "The Supreme Court has instructed that courts are to interpret the term 'employ' in the FLSA expansively." *Hale v. State of Ariz.*, 993 F2d 1387, 1393 (9th Cir), *cert denied*, 510 US 946 (1993) (citation omitted).  In light of this broad interpretation, the question of "whether there is an employment relationship under the FLSA is tested by 'economic reality' rather than 'technical concepts.'"  *Id*, quoting *Goldberg v. Whitaker House Coop.*, 366 US 28, 33 (1961).  The FLSA also recognizes that there may be more than one "employer."  29 CFR § 791.2 (describing various "joint" employment situations).

The Oregon definition of "employer" is far different than the FLSA definition. The applicable statutes on which the First Claim appears to be based, ORS 652.110-200, do not define an "employer," and the definition in ORS 652.310(1) cannot be used in a private action.  *Pope v. Judicial Dep't,* 79 Or App 732, 721 P2d 462 (1986).  Instead, the Oregon courts give effect to the common meaning of employer as "one who hires another for wages."  *Id*  at 736, 721 P2d at 464.  Plaintiff has not cited, and this court has not found, any Oregon authority for expanding the Oregon meaning of "employer" as in the FLSA. Given the differences in the definitions and absence of guidance by the Oregon courts, this court is reluctant to impose personal liability on the shareholders of a closely held corporation for nonpayment of wages under ORS 652.110-.200.

Alternatively, plaintiff argues that he alleges sufficient facts to pierce the corporate veil of OPA and assert liability against Balog personally. "[A]s a last resort, where there is no other adequate and available remedy," a corporate veil may be pierced under certain circumstances to impose personal liability on a shareholder of a corporation. *Amfac Foods, Inc. v Int'l Sys. & Controls Corp.*, 294 Or 94, 103, 654 P2d 1092, 1098 (1982). To pierce a corporate veil, a plaintiff must plead and prove three things:

> (1) the shareholder must have actually controlled or shared in the actual control of the corporation; (2) the shareholder must have engaged in improper conduct in the exercise of control over the corporation; and (3) the shareholder's improper conduct must have caused the plaintiff's inability to obtain an adequate remedy from the corporation.

*Salem Tent & Awning Co. v. Schmidt*, 79 Or App 475, 481, 710 P2d 899, 903 (1986), citing *Amfac Foods*, 294 Or at 106-12, 654 P2d at 1100-03.

With respect to the first element, the Complaint fails to expressly allege that Balog is an OPA shareholder. However, it does allege that Balog was its President, owner and sole controlling manager. Complaint, ¶¶ 1, 31. As the owner of OPA, Balog necessarily is a shareholder, if not the sole shareholder. With respect to the second element, plaintiff alleges that Balog used his control for the improper purpose of diverting to himself wages owed to plaintiff and used OPA "as a piggy bank." *Id,* ¶¶ 8, 10, 24. This is a sufficient factual allegation of improper conduct by Balog. With respect to the third element, plaintiff alleges "it may be impossible for [him] to achieve an adequate remedy from OPA and APR." *Id*, ¶ 25. Plaintiff does not definitively allege that he is unable to obtain an adequate remedy from OPA. Nonetheless, as supporting facts, plaintiff alleges that Balog created APR with borrowed money from plaintiff to avoid creditors of OPA and that both OPA and APR are "grossly undercapitalized." *Id,* ¶¶ 16-20, 24. Based on these allegations, it is

reasonable to infer that OPA is unable to pay its debts and, thus, is sufficient to allow this alternative claim to proceed against its owner under the alter-ego theory.

Therefore, Balog's motion to dismiss the First Claim should be denied.

## II.  Third Claim (Breach of Contract – OPA Loan)

The Third Claim alleges that OPA and Balog are liable for nonpayment of a promissory note signed by Balog "on behalf of OPA" for a $15,000 loan from plaintiff. *Id*, ¶ 56. Both defendants move to dismiss this claim for failure to state a claim. They question the legal significance of Balog signing the note "on behalf of" OPA. However, the answer is self-evident. An entity such as OPA can only be obligated on a note by means of a signature on the note by one of its officers or agents. That allegation clearly refers to Balog signing the note as the President or agent of OPA. Thus, that motion should be denied.

In addition, Balog seeks dismissal because he cannot be held personally liable for OPA's debt simply because he is an "owner and the sole controlling manager" of OPA. *Id*, ¶ 58. As discussed above, plaintiff has pled sufficient facts to hold Balog liable for OPA's debts under an alter-ego theory. Thus, Balog's motion to dismiss the Third Claim should be denied.

## III.  Fifth Claim (Unjust Enrichment – Payment to Knaus)

The Fifth Claim alleges that OPA and Balog have been unjustly enriched by plaintiff's payment on their behalf of $3,731 to Mr. Knaus. *Id*, ¶ 63. Defendants move to dismiss this claim due to insufficient factual allegations as to the reason for the payment, who employed Mr. Knaus, whether the payment to him was in fact for wages, or defendants' relationship, if any, to the unidentified employer. However, plaintiff alleges that Mr. Knaus, a registered nurse, "worked with [plaintiff] at OPA," that, at some point in 2011,

plaintiff paid $3,731 to Mr. Knaus for wages because OPA "lacked sufficient funds at the time to pay Mr. Knaus his wages," and that Balog was aware of plaintiff's payment, and that, as a result, OPA benefitted from the payment. *Id*, ¶¶ 16, 19, 63, 64. The Complaint could perhaps be better drafted, but is more than sufficient to put defendants on notice of how they were unjustly enriched by plaintiff's payment to Mr. Knaus for wages. Thus, defendants' motion to dismiss the Fourth Claim should be denied.

Balog also seeks dismissal because he cannot be held personally liable for this debt simply because he was OPA's owner and controlling manager and "aware of the payment." *Id,* ¶ 64. As discussed above, plaintiff has pled sufficient facts to hold Balog liable for OPA's debts under an alter-ego theory. Thus, Balog's motion to dismiss the Fifth Claim should be denied.

## IV. Sixth Claim (Unjust Enrichment – Line of Credit)

The Sixth Claim alleges that OPA and Balog have been unjustly enriched by plaintiff using his personal "line of credit exclusively for expenses he incurred on behalf of OPA and other businesses owned by Dr. Balog," on which the "current balance" is $5,975. *Id*, ¶ 67. Defendants move to dismiss this claim due to insufficient factual allegations as to which defendant is liable for which parts of the debt. That level of detail is not necessary at this stage. The allegations are adequate to place defendants on notice as to how they were unjustly enriched by plaintiff using his personal line of credit. The amount owed by each defendant can easily be ascertained through discovery, if not through defendants' records. Thus, defendants' motion to dismiss the Sixth Claim should be denied.

Balog also seeks dismissal because he cannot be held personally liable for this debt simply because he was OPA's president and "aware of the line of credit." *Id,* ¶ 68. As

discussed above, plaintiff has pled sufficient facts to hold Balog liable for OPA's debts under an alter-ego theory. Thus, Balog's motion to dismiss the Sixth Claim should be denied.

## V. Seventh Claim (Declaratory Relief – Partnership)

The Seventh Claim seeks a declaration that plaintiff and Balog "are in partnership with regard to the development of the light emitting electromagnetic surgical scalpel." *Id*, ¶ 73. After Balog developed the device, plaintiff loaned him $10,000 "for the creation of molds to be used for production of the device." *Id*, ¶ 71. At Balog's "urging," plaintiff "agreed to convert the loan amount into an equity interest in the venture," but has received nothing in return for his loan. *Id*, ¶ 72.

Balog moves to dismiss this claim as failing to allege either the elements of a partnership or facts plausibly supporting the existence of a partnership. In particular, he points to the allegation referencing a "venture" (*id*, ¶ 72), noting that a joint venture is not a partnership. *Walls v. Grible,* 168 Or 542, 545-46, 124 P2d 713, 714 (1942). He also argues that "equity" is not a concept associated with partnerships, that the loan was allegedly made to him, not to a partnership or other entity, and after he had already developed the scalpel.

Under Oregon law, "the association of two or more persons to carry on as co-owners a business for profit creates a partnership, whether or not the persons intend to create a partnership." ORS 67.055(1). The factors that determine whether a partnership has been created include the "right to receive a share of profits of the business," an "expression of an intent to be partners in the business," and contributing money to the business. ORS 67.055(4). Although Balog may have invented the device, plaintiff alleges that he contributed money to a business intended by both of them to generate profits from the

9 - FINDINGS AND RECOMMENDATION

production and sales of the device.  This is sufficient to plausibly allege the creation of a partnership.  Thus, Balog's motion to dismiss the Seventh Claim should be denied.

## VI. Eighth Claim (Breach of Fiduciary Duty - Partnership)

The Eighth Claim alleges that Balog breached his fiduciary duty to plaintiff by failing to "disclose any and all information about the status of the light emitting electromagnetic surgical scalpel" and "to remit to [plaintiff] his share of any proceeds generated from the device."  Complaint, ¶¶ 75-77.  Balog moves to dismiss this claim as failing to state facts showing the source of a fiduciary relationship to plaintiff in connection with the scalpel.  However, this claim incorporates the prior allegations and is clearly based on Balog's duty of loyalty owed by a partner to the alleged partnership and plaintiff as the other partner.  ORS 67.155(1).  Because the Eighth Claim states a valid claim for relief, the motion to dismiss should be denied.

## VII. Ninth Claim (Claims Relating to APR)

The Ninth Claim alleges three counts against Balog relating to APR for breach of fiduciary duty (Count 1), unjust enrichment (Count 2), and fraud (Count 3).  Balog moves to dismiss this claim on several grounds.

First, he complains about inconsistent allegations regarding plaintiff's and Balog's relationship to APR, a limited liability company.  The Complaint alleges that Balog is the president of APR (Complaint, ¶ 5), but variously identifies plaintiff as a partner (*id*, ¶ 16) co-owner (*id*, ¶ 20), and minority shareholder in APR.  *Id,* ¶ 80.  However, a limited liability company has members (ORS 63.001(21)) and managers (ORS 63.001(19)), not presidents, partners, owners, and shareholders.  Without failing to identify the relationship between the parties, Balog argues that he cannot assess what duties he allegedly owed and breached.

10 - FINDINGS AND RECOMMENDATION

The Complaint is not a model of drafting due to plaintiff's inconsistent wording. However, it clearly alleges that APR was formed as a "three-member limited liability company" with an Operating Agreement in which Balog held a 40% interest and plaintiff and Mr. Knaus each held a 30% interest. Complaint, ¶ 16. Defendants have no reason to be confused about the relationship on which the Ninth Claim is based.

Balog argues that Count 1 fails to state a claim for relief because it refers to remedies "under the Revised Uniform Partnership Act" which does not apply to a limited liability company. *Id,* ¶ 83. Plaintiff concedes that he made a drafting error and instead should have referenced the Uniform Partnership Act, ORS Chapter 67, which provides the same alleged remedies, namely dissolution (ORS 63.661) and distribution and accounting of company assets (ORS 63.625). With this correction, Count 1 sufficiently states a claim.

Balog seeks dismissal of Count 2 for failing to allege how Balog unjustly received the benefit of plaintiff's $37,190 contribution to APR. However, the Complaint alleges that plaintiff advanced this amount to APR "[t]o cover Dr. Balog's capital contribution" which has not been reimbursed. Complaint, ¶¶ 85-86. If true, as must be assumed at this juncture, this would be a benefit that unjustly enriches Balog. Moreover, as previously discussed, plaintiff alleges that by abusing the corporate formalities of both OPA and APR, Balog should be personally liable under the alter-ego theory. These allegations are sufficient to state a claim against Balog for unjust enrichment.

Balog also seeks to dismiss Count 3 for failing to allege the time, place and manner of any representation of fact and whether the misrepresentation was written or oral. This

11 - FINDINGS AND RECOMMENDATION

motion is not well-taken. Plaintiff alleges that "at the time" when he invested $69,170[1] into the formation of APR, Balog represented that APR would earn a profit and that plaintiff would receive 30% of that profit. *Id,* ¶ 89. This alleges the time of the representation, and premits the reasonable inference that the representation was oral. Plaintiff also alleges that the representations were material, that Balog knew they were false when made, that he believed them to be true and that he relied on them when making his investment in APR. *Id,* ¶¶ 90-92. Thus, all the necessary elements to state a valid fraud claim are alleged.

Plaintiff also alleges that Balog owed him a fiduciary duty. *Id,* ¶ 93. Since APR is a limited liability company, Balog, as a member, owed the duties of loyalty and care to his fellow members, including plaintiff. ORS 63.155. However, the alleged representation was made prior to the formation of APR and cannot be based on any fiduciary duty as a result of Balog's status as a member of APR. Alternatively, plaintiff alleges that Balog, as his employer, owed him a duty of fair dealing. Complaint, ¶ 94. However, an employer has no "special relationship" with an employee giving rise to any fiduciary duty. *See Bennett v. Farmers Ins. Co.,* 332 Or 138, 161, 26 P3d 785, 799 (2001).

Nonetheless, even if these allegations concerning Balog's fiduciary duties are stricken or ignored, plaintiff still states a claim for fraud. Accordingly, Balog's motion to dismiss all or part of the Ninth Claim should be denied.

## VIII. Attorney Fees and Punitive Damages

Defendants seek to strike the requests in the Prayer to recover attorney fees on the Second, Fourth, Fifth, Sixth, Eighth and Ninth Claims because the Complaint fails to allege

---

[1] This sum includes the $39,170 in paid vacation time which plaintiff advanced to Balog for his share of the capital contribution into APR, as well as another $30,000 from plaintiff for his capital contribution. Complaint, ¶ 18.

any factual basis for awarding attorney fees. Plaintiff responds that his requests for attorney fees are supported by attorney fee provisions in the promissory notes (Third and Fourth Claims) and his Employment Agreement with OPA (Fifth, Sixth, Eighth and Ninth Claims). Based on those attorney fee provisions, defendants' motion to strike should be granted, but with leave to amend as to the Third, Fourth, Fifth, and Sixth Claims.  However, the attorney fee provision in the Employment Agreement provides no basis to award attorney fees on the Eighth and Ninth Claims concerning APR which have no relationship to plaintiff's status as an employee of OPA.  Accordingly, defendants' motion to strike should be granted with prejudice as to the prayer for attorney fees on the Eighth and Ninth Claims.

Finally, defendants seek to strike the "Notice of Punitive Damages" (Complaint, ¶ 96) because plaintiff pleads no claim that could support an award of punitive damages except the Second Claim which is preempted by ERISA and the Ninth Claim which defendants seek to dismiss as failing to state a claim.  However, as discussed above, the Ninth Claim does state a claim and should not be dismissed.  In any event, this motion is premature since the Complaint does not allege a claim for punitive damages, but simply complies with ORS 31.725 by putting defendants on notice that plaintiff intends to file a motion to allow an award for punitive damages.  This allegation is appropriate in state court where the Complaint was originally filed.  Until plaintiff includes an allegation for punitive damages in an amended complaint, defendants' motion to strike punitive damages is not yet ripe and should be denied on that basis.

///

///

///

13 - FINDINGS AND RECOMMENDATION

**RECOMMENDATION**

Defendants' Motion to Dismiss and Strike some or all of plaintiff's claims (docket # 4) should be GRANTED in part and DENIED in part with leave to amend as follows:

1. Granted as to Count 3 of the First Claim and the Second Claim which should be dismissed without prejudice;

2. Granted as to the interest rates alleged in the Third and Fourth Claims which should be stricken;

3. Granted as to the requests for attorney fees in the Prayer as to the Third, Fourth, Fifth, and Sixth Claims which should be stricken without prejudice and with leave to amend and as to the Eighth and Ninth Claims which should be stricken with prejudice; and

4. Otherwise denied.

**SCHEDULING ORDER**

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due Friday, June 15, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED May 29, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge